[No. 6,909.—Department No. 1.] ·

## ALEXANDER v. BOUTON ET AL.

MARRIED WOMEN — CONTRACT — PROMISSORY NOTE — MORTGAGE — PRINCIPAL AND SURETIES.—The appellant, to secure the debt of her husband, joined with him in a note, and in a mortgage upon her separate property—having been induced to do so by the representations of her husband that she was to be liable only to the extent of the mortgaged property. The plaintiff also took a collateral agreement from others, to secure any deficiency that might remain after the sale of the mortgaged property; but the defendants were not parties to this agreement. *Held*—in an action to foreclose the mortgage, that the appellant was bound as principal, and that her liability was not affected by the understanding she had with her husband, or by the additional security taken by the plaintiff; and *held further*, that she was liable for any deficiency that might arise upon the sale of the mortgaged premises, and that judgment might be docketed against her for it.

ID.—ID.—ID.—ID.—A married woman, except in relation to her separate property, is, in this State, under a disability to contract; but, as to her separate property, she is considered as a *femme sole*, and may make any contract with relation to it; and where a married woman executes a note, and a mortgage upon her separate property, the promise to pay is to be construed as relating, not only to the mortgaged premises, but to her separate property generally.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Seventeenth District Court, County of Los Angeles. SEPULVEDA, J.

The facts are stated in the opinion.

*Brunson & Wells*, for Appellant.

The decree ordering the docketing over of a judgment against appellant, for any deficiency remaining unpaid after the sale of the mortgaged premises, is in direct conflict with the terms of the contract set forth in the answer and proven on the trial.

The contract of Griffith & Crawford, to pay such deficiency, was made contemporaneously with the note and mortgage, and was part and parcel of the same transaction. The appellant consented to furnish the mortgaged property, with the understanding that she incurred no liability, except to furnish this security.

Without reference to this understanding, the appellant being a married woman, and the liability not being her own debt, or a debt contracted for her use or benefit, or for the benefit of her separate estate, she is not liable for any balance remaining unpaid, after the sale of her lands, on the mortgage foreclosure. (Civ. Code, §§ 1556, 158, 171; Maclay v. Love, 25 Cal. 367; Smith v. Greer, 31 id. 477; Terry v. Hammonds, 47 id. 35; Drais v. Hogan, 50 id. 121; White v. McNett, 33 N. Y. 376.) This is not her separate debt, so as to make her or her property liable under § 171, Civ. Code, beyond the particular property mortgaged; and the provisions of that section expressly exempt her from any liability for the debts of her husband. (Shartzer v. Love, 40 Cal. 93; Willard v. Eastham, 15 Gray, 328, 385; Heburn v. Warner, 112 Mass. 271; Yale v. Dederer, 22 N. Y. 451; Payne v. Burnham, 62 id. 69; Gorman v. Cruger, 79 id. 87; Williams v. Hayward, 117 Mass. 532; Thacher v. Churchill, 18 Mass. 108; 1 Jones on Mort. § 110; Kidd v. Conway, 65 Barb. 158; Brown v. Orr, 29 Cal. 122; Corn Exchange Ins. Co. v. Babcock, 42 N. Y. 613.)

Thom & Stephens, for Respondent:

Upon the last point, cited Wood v. Oxford, 52 Cal. 412; Parry v. Kelley, id. 334; Marlow v. Barlew, 53 id. 456.

McKee, J.:

Defendants in the Court below, on the 1st of September, 1877, made the promissory note and executed the mortgage which constitute the subject-matter in controversy in this case.

The defendant, E. Bouton, since the execution of the note and mortgage, has been adjudicated a bankrupt. As a defense to the action, the defendant, Margaret, in her answer to the complaint, alleges that, at the time of the execution of the mortgage, she was a married woman and the wife of the codefendant; that her husband was at that time in debt; and for the purpose of enabling him to borrow money from the plaintiff to pay his indebtedness, she became security for him to the extent of her separate property; that of the money which her husband received from the plaintiff she had had no portion; but that her husband received and applied it all to the payment of his debt. No portion of it was applied to her use and benefit, or to the use and benefit of any of her separate property; that the plaintiff knew that she signed the promissory note only as a surety, and with knowledge of that fact had taken an agreement in writing from others to pay any deficiency in case the mortgaged premises should, after foreclosure and sale, prove insufficient to satisfy the mortgage debt; and that, in consideration thereof, the plaintiff agreed to release her from any judgment for insufficiency.

At the trial the promissory note and mortgage were offered in evidence. The one was signed by the husband and wife, and the other was also executed by them in the mode prescribed by law. By the promissory note both, jointly and severally, promised to pay to the plaintiff, or to her order, the sum of $2,000, one year after date, with interest at the rate of one per cent. per month, etc. By the mortgage both also jointly and severally covenanted to pay to the plaintiff the promissory note when it became due, and all assessments and liens which might be laid or imposed upon the mortgaged property during the existence of the mortgage.

It does not appear by the promissory note or mortgage that the mortgaged premises were the separate property of the wife; but, at the trial of the case, the wife testified that they were her separate property; and the husband in substance testified that he and a friend, by representations or statements made to the wife, induced her to consent to mortgage her property, for the purpose of enabling him to borrow the money from the plaintiff, and that she signed the promissory note and executed the mort-

gage with the understanding that she was only to furnish the security, and incur no personal liability. It also appears, by the testimony of the husband, that when he received the money from the plaintiff, he applied it to the payment of a debt which he owed jointly with one Crawford; that no part of the money went to his wife, nor was any of it applied to her use or benefit, or used for the betterment of any of her separate property. The testimony also shows that the agent of the plaintiff refused to make the loan to the defendants upon the security which they offered, unless other parties would agree to pay any deficiency which might remain after a foreclosure sale of the mortgaged property. Parties who were friends of the defendants, thinking that the security was perfectly good, agreed in writing with the plaintiff to that effect. But the agreement was made solely with the plaintiff. The defendants were not parties to it; nor was it made for their benefit or for the benefit of either of them ; and the plaintiff made no promise or agreement with the defendants or either of them, that in consideration of that agreement, she would release the defendant Margaret from a judgment for such deficiency.

We think it is evident that the defendant Margaret was not induced to join her husband, in making the contract with the plaintiff, by anything which was said or done by the plaintiff or by her agent; neither participated in any of the statements or representations which were made to her by her husband, nor did either of them know that such statements had been made. After having been persuaded by her husband, the defendant consented to join him in the transaction as a surety, and to mortgage her separate property for that purpose ; and when she signed the note and executed the mortgages, she *believed* that she was doing so as a surety for her husband. But neither she nor her husband so informed the plaintiff or her agent. Nor did either of them know that she joined her husband in making the contract otherwise than as a principal. It is true the plaintiff dealt with her as a married woman; that fact was known to the plaintiff and her agent, for the mortgage itself revealed it. But when a married woman makes a contract with another, which she is authorized by law to make, the legal presumption is that she contracts as a principal; and, in an action at law, or in

equity, with reference to it, if she contracted otherwise than as a principal, it is incumbent upon her to prove it; for as she possesses by law all the rights, she is subject to all the duties, of a contracting party.

As a principal, then, the defendant Margaret became bound by her contract with the plaintiff, if she had capacity to make it at all.

A married woman unconnected with separate property of her own is, in this State, under disability to contract. She may hold property jointly with her husband, in community, as tenant in common, or as joint tenant, but her interest in the community property she holds in subjection to her husband. As head of the family he is entitled to the management and control of such property. He may dispose of it without the consent of his wife, and it is not liable in law for any contracts which may be made by her after marriage, unless by his consent manifested according to law. It is otherwise as to the wife's separate property; that belongs exclusively to her—her husband has no interest in it. She has the absolute right to use and enjoy it and the rents, issues, and profits thereof, and to dispose of the same, by her own act and deed, without the consent of her husband. She is, as to her separate property, considered a *femme sole*, and she may make any contract respecting the same with her husband, or any one else competent in law to contract. It is primarily liable for any or all of her contracts made before or after her marriage, and to the full extent of it she is bound for the performance of the obligation which she has incurred by reason of any of them. The separate property of her husband is not liable for any of her contracts made before her marriage; the Code has especially exempted it from liability for contracts of that character. Her creditors must look, first of all, to her separate property for the satisfaction of her contracts, whether made before or after marriage.

There is no question, then, as to the validity of the defendant Margaret's contract. It is one which she made respecting her separate property as a principal, jointly with her husband, and being valid, it may be enforced against her by any of the remedies known to the law. As a *femme sole*, she may sue and be sued on her contract; and judgment may be rendered for and against

her, and be enforced by the process of courts in any action, at law or in equity, which she may bring or defend.

It was competent, therefore, for the Court below in this action to render judgment against the defendant Margaret for the amount which was due the plaintiff, and to direct a sale of the mortgaged property; and if after sale it appeared that the proceeds were insufficient, and a balance still remained due, to docket the judgment for said balance against her, according to § 726 of the Code of Civil Procedure; for, being personally liable on her contract as a _femme sole_, judgment recovered thereon becomes a lien on her separate real estate, and may be enforced as in other cases in which execution may issue. (_Marlow_ v. _Barlew_, 53 Cal. 456.) Any judgment rendered against a married woman, made upon a contract respecting her separate property, may be enforced against her separate property. (_Van Maren_ v. _Johnson_, 15 Cal. 311.) A partial performance of the obligation of her contract does not extinguish it. It continues to exist until it is fully performed or released, and until it is fully performed it may be enforced.

Judgment and order affirmed.

MORRISON, C. J., and McKINSTRY, J., concurred.

[Mr. Justice Ross being disqualified, did not participate in the decision of this cause.]